KATE WELLS, SB #107051
2600 Fresno Street
Santa Cruz, California 95062
Telephone: (831) 479-4475
Facsimile: (831) 479-4476
Email: lioness@got.net

Attorney for Plaintiffs, GEOFFREY WELLS and JETTZEN DICKEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY WELLS AND JETTZEN DICKEL,<br><br>Plaintiffs,<br><br>vs<br><br>CITY OF WATSONVILLE; CITY COUNCIL MEMBER/MAYOR KIMBERLY PETERSEN; CITY COUNCIL MEMBER MANUEL BERSAMIN; CITY COUNCIL MEMBER OSCAR RIOS; CITY COUNCIL MEMBER ANTONIO RIVAS; CITY COUNCIL MEMBER GREG CAPUT; CITY COUNCIL MEMBER EDWARD DIN; CITY COUNCIL MEMBER DALE SKILLICORN; CITY DIRECTOR JOHN DOUGHTY; AND DOES 1 - 15,<br><br>Defendants. | CASE NO. C08 01382 RS<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - VIOLATION OF CONSTITUTIONAL RIGHTS<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs GEOFFREY WELLS and JETTZEN DICKEL, allege as follows:

**JURISDICTION AND VENUE**

1.  This action arises under the Civil Rights Act of 1871 (42 U.S.C. Sections 1983 and 1988) and the First and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction of the federal claims under 28 U.S.C. Sections 1331, 1332, 1343(3), 1343(4), 2201, and 2202. This court has pendent jurisdiction over the state law claims.

2.  Venue is proper in the Northern District of California, San Jose Division

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

1

pursuant to 28 U.S.C. section 1391, in that the subject matter of this action arose in this district, all Defendants are subject to personal jurisdiction in this district, and there is no district in which the action may otherwise be brought.

**PARTIES**

3. Plaintiff GEOFFREY WELLS ("WELLS") is, and at all relevant times herein was, a resident of the County of Santa Cruz, State of California, who wishes to open a tattoo studio in the City of Watsonville. Plaintiff JETTZEN DICKEL ("DICKEL") is, and at all relevant times herein was, a resident of the City of Watsonville, County of Santa Cruz, State of California who wishes to receive a tattoo at WELLS' tattoo studio when it opens in the City of Watsonville. WELLS and DICKEL are hereinafter collectively known as "the plaintiffs".

4. Defendant CITY OF WATSONVILLE ("CITY") is a political subdivision of the State of California.

5. Defendants CITY COUNCIL MEMBER/MAYOR PETERSEN ("PETERSEN"); CITY COUNCIL MEMBER BERSAMIN ("BERSAMIN"); CITY COUNCIL MEMBER DIN ("DIN"); CITY COUNCIL MEMBER CAPUT ("CAPUT"); CITY COUNCIL MEMBER RIVAS ("RIVAS"); CITY COUNCIL MEMBER RIOS ("RIOS"); CITY COUNCIL MEMBER SKILLICORN ("SKILLICORN") (hereinafter collectively known as "THE CITY COUNCIL") are members of the Watsonville CITY Council; DIRECTOR JOHN DOUGHTY (hereinafter "DOUGHTY") is the Director of Community Development for the CITY; each of the foregoing and DOES 1 through 15 are sued herein in their individual and in their official capacities; in performing the unlawful acts hereafter mentioned, these Defendants conspired with each other and acted under color of the statutes, ordinances, regulations, customs and usages of the State of California, and pursuant to the official policy, custom and practice of the CITY. Each Defendant is, and was at all relevant times, the agent, employee or representative of each other Defendant; and had the legal duty to oversee the conduct of every other Defendant named.

6. The names and capacities of Defendants DOES 1 through 15 are unknown to the Plaintiffs. Each of these fictitiously named parties has acted as agent of or in concert with

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

2

the named Defendants in the matters referred to herein, and is responsible in some manner for the damages suffered by Plaintiffs. Plaintiffs will amend this complaint to add the names and capacities of such Defendants when ascertained.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

7. In November, 2006, WELLS, desiring to open a tattoo art studio in the City, and DICKEL, who wishes to receive a tattoo at WELLS' studio in the City, hired an attorney to research the requirements for opening such a business in the City. After preliminary research, plaintiffs' attorney discovered that there was an ordinance in the city which prohibited the art of tattooing except under the supervision of a licensed physician. In November, 2006, plaintiffs' attorney sent a letter to the City Attorney for Watsonville, Alan Smith, with copies to each of the CITY COUNCIL members explaining that tattooing is an art form and conduct subject to First Amendment protection; and as such, the city's ordinance, a defacto ban on tattooing, was unconstitutional. The letter further requested that the City take action to remedy the situation to avoid litigation regarding the matter.

8. In response, the City took action by placing a one year moratorium halting any action regarding the tattoo ordinance while the council contemplated what action they should take, if any. On June 26, 2007, and on August 14, 2007, a proposed amended ordinance was presented to the defendants establishing requirements for opening a business in the CITY for the purpose of body art and piercing activities. At the public hearings on the matter, defendants RIVAS, RIOS, CAPUT and SKILLICORN expressed their personal animosity and prejudices towards body art and further stated that there was no place for such an establishment in the City stating that it would project the "wrong" image for the CITY. RIVAS and CAPUT demeaned the tattoo artistry business as well as those who are tattooed, including the plaintiff WELLS herein. The Deputy Police Chief testified at one of the hearings that he had researched the issues by contacting the police departments of neighboring cities with tattoo establishments and had learned that categorically, without exception, the statistics showed that there was no higher crime rate in neighborhoods with operating tattoo studios and that there was absolutely no correlation between the incidence of crime and the location of tattoo establishments. Additionally, the Watsonville Chief of Police

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

3

declared publically in the presence of WELLS and his attorney that there was no relationship between the location of tattoo studios and crime.

9. The proposed amendments to the tattoo ordinance, while ostensibly legalizing the practice of tattooing by a non-physician, included highly restrictive zoning mandates and set back requirements from schools, parks, liquor establishments and other tattoo studios that effectively eliminated any potential site for a tattoo studio in the CITY. Plaintiffs objected to the proposed zoning restrictions and publicly informed the defendants that the parcel map provided to the CITY COUNCIL by DOUGHTY, which allegedly showed available sites for tattoo studios, was inaccurate and misleading - that among other things, the sites which were represented by DOUGHTY as potential tattoo studios included a gas station, a 7/11 market, hotels, a moving and storage operation and private residences.

10. In discussing the amended ordinance, defendants RIVAS, RIOS, CAPUT and SKILLICORN repeated their personal prejudices against the art of tattooing and expressed their contempt for those who chose to so adorn their bodies, including the plaintiffs herein. Defendant RIVAS moved to pass the ordinance only with even more stringent restrictions regarding the setback requirements. When informed by DOUGHTY that such restrictions would not allow for any potential site, the CITY COUNCIL ignored such advice and put it to a vote. The amended ordinance did not pass. At that point, the CITY COUNCIL, repeating their contemptuous views for the art of tattooing, voted to keep the old ordinance requiring that tattooing be performed only under the supervision of a licensed physician.

11. On or about September 11, 2007, another public hearing was held regarding a proposed amended ordinance for tattoo and body art establishments. The newly amended ordinance increased the setback requirements between body art establishments and made other minor changes - the zoning restrictions were the same and with the proposed increased setback between studios, it left even fewer possible sites than the previous proposed amended ordinance. Despite plaintiffs' and their attorney's stated written and oral objections at the hearing that the zoning restrictions did not reasonably allow for any potential location for a tattoo business, the CITY COUNCIL voted by a majority to pass the proposed amended ordinance on or about September 25, 2007.

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

12. While the CITY COUNCIL repeatedly stated that their concerns were for the health and safety of their constituents, the adopted ordinance sets out extensive health and safety requirements before a tattoo studio may receive a permit (three permits are required by the ordinance, including background checks and fingerprinting by the police department and the requirement of classes regarding blood borne pathogens, immunizations and sterilization procedures and other stringent health and safety requirements as to the operation of the studio itself) which would ameliorate any genuine concerns of the CITY COUNCIL for the health and safety of their constituents.. Plaintiffs do not and never have objected to such health and safety requirements. The CITY COUNCIL's stated concerns are simply a ruse to cover up their prejudice against the protected art form and their motive to ban such establishments from the CITY - a goal which they accomplished by passing the ordinance with the zoning restrictions in place knowing that there would be no sites available.

13. CAPUT, RIVAS and RIOS repeatedly stated on the record that their constituents were opposed to allowing a tattoo studio to operate in the CITY, however, at the numerous public hearings not a single person appeared to object to the legalization of tattooing in the CITY, nor did any of the CITY COUNCIL members present any evidence - no letters, no petitions, no emails - that any of their constituents were opposed to such legalization. In fact, the only public input consisted of spontaneous comments by residents of the CITY who happened to be at the hearings regarding the proposed tattoo ordinance, and all of such comments were in favor of changing the law to allow the art of tattooing in the CITY.

14. WELLS is now foreclosed from opening a body art establishment, where he can conduct protected First Amendment activity, and DICKEL is unable to receive a tattoo at WELLS' studio, as a result of the CITY COUNCIL's passage of the tattoo ordinance that is a de facto prohibition on the location of tattoo studios in the CITY by unnecessary and unlawful zoning restrictions in violation of plaintiffs' constitutional rights. Defendants intended to foreclose WELLS from opening a tattoo studio in the CITY and successfully achieved their goal by passing an ordinance that is an effective ban on the location of such a studio in the CITY.

15. Tattooing is an art form that has been practiced in virtually every culture on

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

the planet for thousands of years. Persons across the cultural spectrum of America have tattoos. Tattooing is believed to be the most commonly purchased form of original art work in the United States. Estimates of the numbers of Americans of certain age groups who have tattoos range as high as 30 per cent. Individuals obtain tattoos to express the full range of human emotions and beliefs, including their religious beliefs and declarations; declarations of patriotism and loyalty to their country; declarations of love and devotion for parents, spouses, children and lovers; beliefs about freedom, loyalty and beauty; membership in organizations or branches of the military; expressions of remembrance for deceased friends and family; and the entire spectrum of human beliefs and feelings.

16. The permanent and indelible nature of tattoos makes them unique as a form of personal art. Persons obtain tattoos to demonstrate their lifelong commitment to other persons, to institutions, to religious beliefs and to political or personal beliefs. No other form of art can communicate this degree of commitment to such beliefs.

17. The artistic importance of tattoos has been described in the catalog for "Pierced Hearts and True Love, a Century of Drawings for Tattoos," an exhibition of tattoo art sponsored by The Drawing Center in New York City. The collection was exhibited at The Drawing Center; Williams College Museum of Art, Williamstown, Massachusetts; the Joan Lehman Museum of Contemporary Art, Miami, Florida; and the Center for the Arts at Yerba Buena Gardens, San Francisco, California in 1995 and 1996. The catalog for that exhibitions notes that: "Tattoos generally function as psychic armor. Often the marker of a state of mind or events, meaning is accrued with time, the bearer explains the mark's significance and the story of how and where it was acquired. Much of the symbolism or meaning cannot be articulated and is private to the wearer, as is every artwork to its creator or collector. By willing it to be placed on the body, the tattoo collector literally becomes one with the art."

18. Tattoo artists develop and become known for their own individual styles and forms. Tattoo artists are the subjects of exhibitions and magazine articles describing their individual works and styles. Tattoo artist develop followings and persons seek them out.

19. Tattooing has been associated with religious beliefs since antiquity. Religious expression remains a common subject of tattoo art. For example, tattooing has been

associated with Christianity since Biblical times. Oriental, African and European mythology also provides sources for much of the tattoo art. One currently popular form of tattoo art called "moko" is based on Maori ritual art and consists of abstract, geometric monotonic patterns. Numerous respected and legitimate art museums have held exhibitions of tattoo art. Likewise, numerous scholarly art books have been published about the art of tattooing.

20. Rather than reducing health risks caused by tattooing, the present CITY statutory scheme which effectively bans tattoo studios in the CITY has promoted an underground tattoo industry with no licensing, regulations or controls, thereby increasing the health and safety risks of the residents of Watsonville who wish to obtain a tattoo in the CITY.

## CLAIM FOR RELIEF NUMBER ONE
## VIOLATION OF 42 U.S.C. SECTION 1983
## (Violation of First and Fourteenth Amendments)
### (All Defendants)

21. Plaintiffs refer to and incorporate herein the allegations in paragraphs 1 through 20 above.

22. The defendants have intentionally, or with reckless disregard for the truth, violated plaintiffs' right to conduct First Amendment activity of tattooing or to receive a tattoo within its boundaries. The CITY accomplished such a de facto ban on tattooing by adopting a zoning ordinance that forecloses or severely limits the location of such activity. Plaintiffs have visited every place in the CITY where it would be legal under the ordinance to conduct such a business and there are no suitable locations available. As such the ordinance has effectively denied plaintiffs a reasonable opportunity to open and operate a tattoo studio or receive a tattoo in violation of plaintiffs' First Amendment rights. Defendants passed the ordinance for the predominant purpose of suppressing plaintiffs' First Amendment rights

23. The CITY has no rational basis for such restrictive zoning in that there is no secondary effect of crime associated with the location of a tattoo studio and the CITY COUNCIL was so informed by the CITY Deputy Police Chief. As such, the ordinance does not further any substantial or rational governmental interest. Any concern for the health and

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

safety of the patrons of a tattoo studio have been foreclosed by the rigorous requirements for obtaining a use permit to open and operate such a studio - requirements to which plaintiffs made it clear to the CITY COUNCIL that they have no objection.

24. As a direct and proximate result of defendants' unlawful actions, plaintiffs have suffered emotional distress and WELLS has suffered monetary damages including attorney's fees and loss of business revenues entitling them to compensation under 42 U.S.C. Section 1983 according to proof, as well as reasonable attorney's fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

25. The individual defendants' conduct was outrageous; it was intentional and malicious, or at least grossly negligent. Such conduct exhibited a reckless disregard for plaintiffs' rights, causing plaintiffs humiliation and mental anguish. Plaintiffs are therefore entitled to punitive damages against the individual defendants, according to proof.

## CLAIM FOR RELIEF NUMBER TWO
## VIOLATION OF 42 U.S.C. SECTION 1983
### (Violation of Fourteenth Amendment - Equal Protection)
### (All Defendants)

26. Plaintiffs refer to and incorporate herein Paragraphs 1 through 25 above.

27. Defendants have intentionally discriminated against plaintiffs herein by treating WELLS' business differently than other businesses of a similar nature with no rational basis for such distinction. For instance, there are no such drastic zoning restrictions for businesses such as art studios or galleries. The business of a tattoo studio is the same except that the art is performed on skin instead of a canvas and the CITY has already addressed any health and safety concerns by the strict use permit requirements to which plaintiffs have no objection. Likewise, there are no such drastic zoning restrictions for businesses such as nail salons or hair salons where permanent dyes are applied to patrons' hair.

28. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress and WELLS has suffered monetary damages including attorney's fees and loss of business. Plaintiffs are therefore entitled to compensation under 42

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

U.S.C. Section 1983 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

29. The individual defendants' conduct was outrageous; it was intentional and malicious, or at least grossly negligent. Such conduct exhibited a reckless disregard for Plaintiffs' rights, causing Plaintiffs humiliation and mental anguish. Plaintiffs are therefore entitled to punitive damages against Defendants, according to proof.

### CLAIM FOR RELIEF NUMBER THREE
### (Fourteenth Amendment - Substantive Due Process)
### (All defendants)

30. Plaintiffs refer to and incorporate herein Paragraphs 1 through 29 above.

31. By taking the unlawful actions as described herein, defendants have intentionally violated plaintiffs' right to substantive due process by passing the tattoo zoning ordinance which, for arbitrary, capricious, discriminatory and irrational reasons, deprives Plaintiffs of their First Amendment right to open a tattoo studio and to receive a tattoo in the CITY. WELLS is a leaseholder of a site in the CITY that is suitable in every manner except that it is not located in the one and only zone presently permitted by the ordinance to house body art studios.

32. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress and WELLS has suffered monetary damages including attorney's fees and loss of business. Plaintiffs are therefore entitled to compensation under 42 U.S.C. Section 1983 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

33. The individual defendants' conduct was outrageous; it was intentional and malicious, or at least grossly negligent. Such conduct exhibited a reckless disregard for Plaintiffs' rights, causing Plaintiffs humiliation and mental anguish. Plaintiffs are therefore entitled to punitive damages against Defendants, according to proof.

### FOURTH CLAIM FOR RELIEF
### (Violation of Rights under the California Constitution)
### (All Defendants)

34. Plaintiffs refer to and incorporate herein Paragraphs 1 through 33 above.

35. By implementing the zoning restriction pertaining to body art establishments as described herein above, defendants have violated plaintiffs' right to freedom of expression, and their rights to be free from violations of their equal protection and due process protections under the California Constitution including Article 1, Section 1, Article 1 Section 7(a) and Article 11, Section 7.

36. As a direct and proximate result of Defendants' violations of plaintiffs' rights under the California Constitution, plaintiffs have suffered emotional distress and monetary damages including attorney's fees and loss of business.

### FIFTH CLAIM FOR RELIEF

### (Request for Declaratory Relief)

37. Plaintiffs refer to and incorporate herein Paragraphs 1 through 36 above.

38. An actual controversy exists between the plaintiffs and the defendants herein as to whether defendants have violated plaintiffs' constitutional rights by effectively banning tattoo art establishments in the CITY through zoning restrictions that have no rational basis.

39. Plaintiffs herein desire a judicial determination of the rights and duties of defendants, and of their compliance or non-compliance with plaintiffs' constitutional rights. Such a declaration is necessary and proper at this time in order that plaintiffs' rights under the constitution can be protected and so that plaintiffs do not suffer any more damages under the law.

### FIFTH CLAIM FOR RELIEF

### (Request for Injunctive Relief)

40. Plaintiffs refer to and incorporate herein Paragraphs 1 through 39 above.

41. Preliminary and permanent injunctions are appropriate remedies because Plaintiffs are suffering irreparable injury and have no plain, speedy or adequate remedy at law. Money damages will not adequately compensate Plaintiffs for the denial of their constitutional rights and civil liberties. Injunctive relief is also appropriate because it will eliminate the multiplicity of lawsuits likely to ensue from Defendants' ongoing unlawful conduct (enforcement of an unconstitutional ordinance), which affects not only the Plaintiffs

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

but others similarly situated.

## DEMAND FOR JURY TRIAL

42.    Plaintiffs demands a trial by jury on the above claims for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for the following relief as to these alleged violations of their civil rights:

A.    A judgment awarding Plaintiffs general and special damages plus prejudgment interest in amounts according to proof;

B.    A judgment awarding punitive damages against the individual Defendants according to proof;

C.    A judgment for injunctive relief to prevent further violation of Plaintiffs' constitutional rights;

D.    A judgment awarding Plaintiffs' reasonable attorneys fees;

E.    A judgment awarding Plaintiffs' costs of suit;

F.    A judgment invalidating the applicable portions relating to body art facilities of Watsonville Municipal Code Title 14, Chapter 27 and Title 14 Chapter 14-16.1203 as unconstitutional; and

G.    Such other and further relief as the Court deems proper.

LAW OFFICES OF KATE WELLS

Dated: March 10, 2008         By: _____
                              KATE WELLS, Attorney for Plaintiffs
                              GEOFFREY WELLS and JETTZEN DICKEL

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
GEOFFREY WELLS AND JETTZEN DICKEL

**DEFENDANTS** CITY OF WATSONVILLE; CITY COUNCIL MEMBER/MAYOR KIMBERLY PETERSEN; CITY COUNCIL MEMBERS MANUEL BERSAMIN; OSCAR RIOS; ANTONIO RIVAS; GREG CAPUT; DALE SKILLICORN; CITY DIRECTOR JOHN DOUGHTY AND DOES 1-15

E-FILING

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  SANTA CRUZ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  SANTA CRUZ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

ADR

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
KATE WELLS (831)479-4475
2600 FRESNO ST.
SANTA CRUZ, CA 95062

ATTORNEYS (IF KNOWN)
C08 01382  RS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

[Checkbox: ☒ 440 Other Civil Rights]

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
42 USC §1983 ACTION FOR DAMAGES & INJUNCTIVE RELIEF
VIOLATION OF 1st & 14th AMENDMENTS THROUGH ZONING RESTRICTIONS OF TATTOO STUDIO

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ ACCORDING TO PROOF   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):  JUDGE _____  DOCKET NUMBER _____

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)** (PLACE AN "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE 3/10/08
SIGNATURE OF ATTORNEY OF RECORD  /s/ Kate Wells